A06A1878. SIMALTON v. AIU INSURANCE COMPANY.
(643 SE2d 553)

MILLER, Judge.

AIU Insurance Company ("AIU") brought this action, seeking a declaratory judgment as to its rights and obligations under an automobile policy insuring James Welch ("Welch"). Mary Simalton appeals from the trial court's grant of summary judgment in favor of AIU, which found that AIU owed no duty to defend or indemnify Welch in an action brought against him by Simalton. Discerning no error, we affirm.

"On an appeal from a grant of summary judgment, we review the evidence de novo and view that evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." *Payne v. Middlesex Ins. Co.*, 259 Ga. App. 867 (578 SE2d 470) (2003). Applying that standard, summary judgment is proper

when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c).

So viewed, the evidence shows that Welch and his wife operated JNJ, a company which transported individuals to medical and related appointments. To operate the business, Welch was required to obtain a taxicab permit from the City of Lawrenceville. Welch transported JNJ clients in a 1992 Toyota Camry owned by him. Although Welch used the Camry for some personal matters, it was used primarily to transport JNJ clients. Welch listed the Camry as a business asset, and depreciated it as such on his tax returns.

JNJ had no automobile insurance. Instead, the Camry was insured under a Personal Automobile Policy (the "Policy") issued by AIU. Welch was listed as a named insured under the Policy, and the Camry was listed as a covered automobile.

On March 3, 2003, while transporting Simalton, as a client of JNJ, to a medical appointment in the Camry, Welch was involved in an automobile accident. Simalton subsequently sued Welch for injuries she sustained in the accident (the "underlying lawsuit") and Welch tendered the claim to AIU, seeking a defense and indemnification under the Policy. AIU undertook Welch's defense under a reservation of rights and filed the current action against Welch, JNJ, and Simalton, seeking a declaratory judgment that it owed Welch no duty under the Policy to defend or indemnify him in the underlying lawsuit. The trial court granted summary judgment in favor of AIU, finding that no coverage existed under the Policy for the claims asserted against Welch by Simalton. This appeal followed.

1. Simalton argues that the Policy is ambiguous as to whether it provided liability coverage for the Camry and, because ambiguities must be construed against the insurer, AIU is bound to provide such coverage. We disagree.

The Policy consisted of three parts: (1) the AIU standard form Personal Automobile Policy; (2) a series of endorsements, each of which amended one or more provisions of the standard form policy; and (3) the Declarations Page.

The standard form policy contains four separate coverage parts, with each part providing a different type of insurance coverage: (1) "Part A — Liability Coverage"; (2) "Part B — Medical Payments Coverage"; (3) "Part C — Uninsured Motorists Coverage"; and (4) "Part D — Coverage for Damage to Your Auto." Each coverage part contains a separate insuring agreement, applicable exclusions, and limits of liability, and a separate premium is charged by the insurance company for each type of coverage selected for each insured automobile.

Here, the Policy insured six different cars, including the Camry, which was identified on the Declarations Page as "Auto 6." The

Declarations Page reflects that, unlike the other cars insured under the Policy, "no coverage" was purchased for the Camry for liability (Part A), medical payments (Part B), or uninsured motorists coverage (Part C). Rather, the Camry was covered only under "Part D — Coverage for Damage to Your Auto."

Simalton argues that because the standard form policy attached to the Declarations Page contained a liability insurance agreement, a question exists as to whether such coverage applied to the Camry. To adopt Simalton's position, however, would require us to disregard the long-accepted practice of allowing insurers to issue standard form policies, containing multiple coverage provisions, even though not all coverages have been purchased by an insured. See, e.g., *Payne*, supra, 259 Ga. App. at 867.

The Declarations Page represents the means by which an insurer tailors its standard form policy to allow insureds to purchase only the types of coverage, and the amount of such coverage, that they desire.[1] It "is the one [part] of the policy likely to be read by the insured, and contains the terms most likely to have been requested by the insured." 16 Richard A. Lord, Williston on Contracts, § 49:25 (4th ed.); see also *Zacarias v. Allstate Ins. Co.*, 775 A2d 1262, 1270 (2001) (Because the declarations page is the "one page most likely to be read and understood by the insured[,]" insurers should "incorporate [thereon] as much information as may reasonably be included."). For that reason, the form policy must be read together with the Declarations Page to determine exactly which coverages, and in what amounts, an insured has purchased. *Payne*, supra, 259 Ga. App. at 869.

Here, the Declarations Page unequivocally shows that no liability coverage was purchased for the Camry. The page contains a heading which states: "**COVERAGE IS ONLY PROVIDED WHERE A SPECIFIC PREMIUM CHARGE IS SHOWN.**" (Emphasis in original.) Under that heading, there are three columns which show: (1) the different types of insurance coverage available under the Policy; (2) whether each type of insurance was purchased for a specific automobile; and (3) if coverage was purchased, the insurer's limits of liability for the same. Those columns reflect that no premium was charged for the Camry to be covered under Part A of the Policy. By its

---

[1] For example, the Declarations Page for the policy at issue included: (1) the names of the policyholders, the policy number, and the effective dates of the policy; (2) the names of individual drivers, other than the policyholders, insured under the policy; (3) a list of the endorsements (identified by form number) attached to and made part of the policy; (4) a list of the automobiles covered by the policy; (5) the types of coverage and limits of liability which have been purchased for each of the covered automobiles; and (6) the premium charged for each type of coverage with respect to each automobile.

clear and unambiguous terms, therefore, the Policy provided no liability coverage for the Camry.

Simalton attempts to avoid Welch's decision to forego liability coverage for the Camry by citing to state statutory requirements that any automobile liability insurance policy issued in the state provide certain minimum limits of liability. See OCGA § 33-34-3 (a) (1). Simalton argues that unless coverage is found for the Camry under Part A, the Policy will fail to comply with this requirement. This position, however, is premised on a misreading of both statutory law and the Policy.

As a threshold matter, the statutory minimum limits of liability apply only to automobile *liability* policies. Despite Simalton's assertions to the contrary, the Policy at issue here is not solely a liability policy. Rather, it is an "Automobile Policy" containing both liability and nonliability coverages. Thus, while the liability coverage provided under Part A must satisfy the statutory requirements as to automobile liability policies, Simalton has cited no authority which would lead us to conclude that insurers must require their insureds to elect the liability coverage available under their policies.[2] Accordingly, AIU is not obligated to provide Welch with coverage which, although available, he chose not to purchase.

2. In light of our finding that the Camry was not covered under Part A, we need not address the question of whether the business pursuits exclusion contained in that part would bar any coverage otherwise available thereunder for the underlying lawsuit.

3. Simalton also argues that the trial court erred in finding that the underlying lawsuit was excluded from coverage under Part D of the Policy. We disagree.

"Part D — Coverage for Damage to Your Auto" covers damage only to the Camry itself. As a result, Part D does not obligate AIU either to defend or indemnify Welch with respect to Simalton's claims against him.

For the reasons set forth above, we affirm the trial court's grant of summary judgment in favor of AIU, finding that no coverage exists under the Policy for the claims asserted against Welch in the underlying lawsuit.

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED MARCH 13, 2007.

---

[2] Moreover, there are circumstances where an insured would want to insure only against the risk of damage to the automobile. These would include where a soldier garages his car while deployed overseas or where the insured holds a security interest in the vehicle of another.

*Gray, Rust, St. Amand, Moffett & Brieske, James T. Brieske*, for appellant.

*Miller & Martin, Michael P. Kohler*, for appellee.