A07A0103. THE CINCINNATI INSURANCE COMPANY
v. MAGNOLIA ESTATES, INC. et al.
(648 SE2d 498)

RUFFIN, Judge.

The Cincinnati Insurance Company ("Cincinnati") filed a declaratory judgment action seeking a determination that it was under no duty to defend its insured, Magnolia Estates, Inc., from a claim, which it contends arose from an intentional act. The parties filed cross-motions for summary judgment, and the trial court ruled against Cincinnati, finding it was obligated to defend and indemnify its insured. In four enumerations of error, Cincinnati challenges this ruling. Finding no error, we affirm.

---

[18] Id.
[19] See *Bibbins*, supra.
[20] See *Frazier*, supra.
[21] See *Williams*, supra at 601 (2).

" 'On an appeal from a grant of summary judgment, we review the evidence de novo and view that evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.' "[1] Summary judgment is appropriate when the record reveals that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[2]

According to the underlying complaint, Leila Walker began living at Magnolia Estates, which is a personal care home, when she was 80 years old and incapacitated by Alzheimer's disease. Several months after moving to the facility, Walker was allegedly struck by another resident in the home. Less than two months later, the same resident allegedly "attacked" Walker, knocking her to the ground, causing her to break several bones. Walker's guardians discovered that the same resident who attacked Walker had been involved in at least 14 "other accidents or incidents which endangered the health, safety and well-being of the other residents and employees."

Walker, through her next friends and guardians, filed suit against Magnolia Estates, alleging claims for negligence, premises liability, and breach of contract.[3] Cincinnati then filed its complaint for declaratory judgment, asserting that the underlying occurrence — the attack upon Walker — was not accidental, but intentional, which Cincinnati contends excludes it from coverage. Thus, Cincinnati reasons, it is not obligated either to indemnify Magnolia Estates or to provide a defense. The trial court disagreed with Cincinnati, and this appeal followed.

The insurance policy at issue provides, in relevant part, that Cincinnati must "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury.' " The policy further states that it "applies to 'bodily injury' . . . only if [such] 'bodily injury' . . . is caused by an 'occurrence.' " An "occurrence" is defined as "an accident, including continuous and repeated exposure to substantially the same general harmful conditions." Finally, the policy contains an exclusion for Expected or Intended Injury, which is defined as " '[b]odily injury' . . . which may reasonably be expected to result from the intentional or criminal acts of the insured or which is in fact expected or intended by the insured, even if the injury or damage is of a different degree or type than actually expected or intended."

---

[1] *Simalton v. AIU Ins. Co.*, 284 Ga. App. 152 (643 SE2d 553) (2007).

[2] See id. at 152-153.

[3] Walker subsequently died, and her executor was substituted as plaintiff. For the sake of clarity, we refer to the executor simply as Walker.

" 'In Georgia, insurance is a matter of contract, and the parties to an insurance policy are bound by its plain and unambiguous terms.' "[4] If the language in the contract is unambiguous, we will enforce the policy as written.[5] If, however, a provision is susceptible to more than one interpretation, we construe such provision against the insurer.[6] Here, the critical issue is whether the attack against Walker can be deemed an accident under the policy. This Court has already addressed the issue in *Crook v. Ga. Farm &c. Ins. Co.*, in which the insured was sued by the parents of a child who died on the insured's property.[7] The insurer argued that the policy did not provide coverage because the death, which was caused by the intentional act of the deceased, was not accidental. In rejecting this argument, we found that an "accident means an event which takes place without one's foresight or expectation or design."[8] Because the injury at issue occurred without the insured's " 'foresight or expectation or design[,]' " we found that the injury constituted an accident for purposes of policy coverage.[9] Similarly, the attack against Walker by a fellow patient occurred without Magnolia Estates's foresight, expectation, or design, and thus is properly characterized as accidental for purposes of coverage.[10]

This interpretation is consistent with the rule of construction that requires us to consider the policy as a whole and to give effect to each provision in the contract such that it harmonizes with the other provisions.[11] The policy at issue contains an exclusion for intentional acts, but it is expressly limited to the intentional acts of the insured. If, as Cincinnati contends, no intentional act can ever constitute an accident for purposes of coverage, then this exclusion is rendered meaningless. And, as a general rule, we "avoid any construction that renders portions of the contract language meaningless."[12]

Finally, we note that the cases cited by Cincinnati do not require a different result. According to Cincinnati, the ruling in *Crook* "is at

---

[4] *SawHorse, Inc. v. Southern Guaranty Ins. Co. of Ga.*, 269 Ga. App. 493, 494 (1) (604 SE2d 541) (2004).

[5] See id. at 495.

[6] See id. at 494-495.

[7] 207 Ga. App. 614 (428 SE2d 802) (1993).

[8] (Punctuation omitted.) Id.

[9] Id. at 615.

[10] See id. We further note that, given the assailant's status as another resident of the personal care home, there is some likelihood that she is non compos mentis and thus unable to form the requisite intent. See *Gulf Life Ins. Co. v. Moore*, 82 Ga. App. 136, 141 (60 SE2d 547) (1950).

[11] See *Fidelity Nat. Title Ins. Co. of New York v. OHIC Ins. Co.*, 275 Ga. App. 55, 57 (619 SE2d 704) (2005).

[12] *RLI Ins. Co. v. Highlands on Ponce, LLC*, 280 Ga. App. 798, 802 (635 SE2d 168) (2006).

odds with numerous other more recent Georgia cases and should be overruled." However, the cases Cincinnati cites are inapposite as they involve the application of policy exclusions rather than the definition of accident.[13] If a policy expressly excludes coverage for assault and battery, our courts have found that an insurer has no duty to defend for bodily injury stemming from such assault or battery.[14] But such exclusion does not exist here. Under these circumstances, the trial court correctly determined that the underlying claim falls within the policy's coverage.[15] In view of this holding, we need not address Cincinnati's remaining enumerations of error.

*Judgment affirmed. Blackburn, P. J., and Bernes, J., concur.*

DECIDED JUNE 27, 2007 — 

*Nall & Miller, R. Shannon Carpenter, Mary A. Palma*, for appellant.

*Fortson, Bentley & Griffin, J. Edward Allen, Jr., Jeffrey W. DeLoach, Kam, Ebersbach & Lewis, Michael G. Kam, Brian D. Lewis, Emily C. Gross, William D. Healan, Jr., William D. Healan III*, for appellees.

---

[13] See *Capitol Indem. Corp. v. L. Carter Post 4472*, 225 Ga. App. 354, 355 (484 SE2d 52) (1997) (assault and battery exclusion); *Continental Cas. Co. v. H.S.I. Financial Svcs.*, 266 Ga. 260, 262 (466 SE2d 4) (1996) (criminal act exclusion); *Jefferson Ins. Co. of New York v. Dunn*, 269 Ga. 213, 215 (496 SE2d 696) (1998) (assault and battery exclusion). Cincinnati also cites *O'Dell v. St. Paul &c. Ins. Co.*, 223 Ga. App. 578, 580 (1) (478 SE2d 418) (1996). However, the language upon which Cincinnati relies is clearly dicta, which is not binding. See *Ga. Southern & Florida R. Co. v. Peters*, 284 Ga. App. 139, 144 (1) (643 SE2d 786) (2007).

[14] See *Pilz v. Monticello Ins. Co.*, 267 Ga. App. 370, 372 (599 SE2d 220) (2004); *Jefferson Ins. Co.*, supra; *Capitol Indem.*, supra at 355-356.

[15] See *Crook*, supra.